A police officer without reasonable, articulable facts giving rise to a suspicion of criminal activity may briefly detain a person, not in custody, and ask if he or she will answer questions. See Florida v.Royer (1983), 460 U.S. 491, 497, 103 S.Ct. 1319, 1324. If the detention promotes a legitimate public concern, such as drug trafficking, the officer's questions are considered only a minimal intrusion that does not violate the Fourth Amendment or Section 14, Article I of the Ohio Constitution. See State v. Robinette (1997), 80 Ohio St.3d 234, 241,685 N.E.2d 762, 768 ("Robinette III"). Once the individualized suspicion of criminal activity that prompts the stop is extinguished, any additional intrusion or detention without a warrant or probable cause must be supported by specific articulable facts demonstrating the reasonableness of the continued detention. See id.
Here, the uniformed Regional Narcotics Unit officer pursued and stopped Hollins because of what he thought was Hollins's "furtive glance" on seeing him at 11:00 a.m. in the bus station. The officer yelled to Hollins, who was then in front of the bus terminal, fifty feet away, "Would you mind speaking to me?" Hollins walked back to the officer. He answered the officer's questions. He gave his name, said where he had come from and where he was going, denied he had drugs, and presented identification. At that point, the officer had no reasonable, individualized suspicion to detain Hollins for investigation. The majority acknowledges this fact by quoting the officer's testimony to the effect that he had wanted to search Hollins to learn whether or not he was carrying narcotics.
Concededly, a voluntary consent may validate an otherwise illegal detention and search. See Davis v. United States (1946), 328 U.S. 582,593-594, 66 S.Ct. 1256, 1261-1262; see, also, State v. Robinette,80 Ohio St.3d at 241, 685 N.E.2d at 768. But, once an accused has been unlawfully detained by law enforcement officers, the totality of the circumstances must demonstrate that a reasonable person would have believed that he or she had the freedom to refuse to answer further questions and could in fact leave. See State v. Robinette, 80 Ohio St.3d at 245,685 N.E.2d at 771. It is the state's burden to prove that consent was freely and voluntarily given, "a burden that is not satisfied by showing a mere submission to a claim of authority." Royer v. Florida, 460 U.S. at 497,103 S.Ct. at 1323-1324. As the majority recognizes, coercion is determined from all of the circumstances, including the time of day, the number of officers, the show of authority, the nature of the request, and the cooperative or uncooperative attitude of the accused. See Schnecklothv. Bustamonte (1973), 412 U.S. 218, 248-249, 93 S.Ct. 2041, 2059.
The officer testified that Hollins was told that he did not have to consent to a search, but this evidence alone is not conclusive. The circumstances here are more indicative of the conclusion that Hollins did not voluntarily consent to the search of his bag, but simply acquiesced to authority. It is undisputed that the officer had retained Hollins's identification. The officer admitted that he had not obtained a written consent or told Hollins that he was free to leave, and, in fact, the arrival on the scene of another officer, who performed the search, implies just the opposite. Hollins testified that several officers and a dog had responded to the scene, and that, when the officer asked if he could search his bag, he felt that he was not free to leave.
The record does not clearly demonstrate that a reasonable person in Hollins' predicament would have believed that he or she had the freedom to refuse to answer the officer's further questions and could actually leave the scene. Accordingly, the state did not satisfy its burden of proving that Hollins had freely consented to the search his bag, and the evidence seized in the search should have been suppressed under the authority of Robinette III.