OPINION
In the early morning hours of June 7, 2000, Deputy William Fitzpatrick of the Franklin County Sheriff's Office stopped an automobile driven by Matthew D. Chiodo. Deputy Fitzpatrick later searched the vehicle and found cocaine in a bag on the passenger seat. Matthew D. Chiodo was then charged with driving while under a driver's license suspension and with failing to stop for a stop sign.
On October 12, 2000, Matthew D. Chiodo was indicted on a charge of possession of cocaine, a felony of the second degree because the quantity was alleged to be between one hundred and five hundred grams. Mr. Chiodo entered a plea of "not guilty" at arraignment and counsel was appointed to represent him. Counsel filed a motion to suppress the cocaine as evidence on the theory that the drug had been discovered and seized as the result of an illegal search and seizure.
In January 2001, new defense counsel entered an appearance as counsel and began formal representation of Mr. Chiodo. A trial date set for January 30, 2001, was continued to April 10, 2001, to allow counsel to prepare. The case was next continued for a hearing on the motion to suppress from April 10, 2001 to June 26, 2001, and later from June 26, 2001 to August 24, 2001.
An evidentiary hearing was held on the August 24, 2001 date. At the conclusion of the hearing, the trial court sustained the motion to suppress.
The state of Ohio has appealed the trial court's ruling, assigning two errors for our consideration:
FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED PURSUANT TO A VALID CONSENT SEARCH.
SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE THAT WOULD HAVE BEEN INEVITABLY DISCOVERED DURING AN INVEN-TORY SEARCH OF A LAWFULLY IMPOUNDED VEHICLE.
The two errors will be addressed together.
The parties acknowledge that Deputy Fitzpatrick had no warrants, either at the time he stopped Mr. Chiodo or at the time he searched Mr. Chiodo's motor vehicle. Warrantless searches are per se unreasonable, subject to well-established exceptions. See Katz v. United States (1967),389 U.S. 347.
The burden of proof is upon the government to demonstrate that an exception to the warrant requirement applies to a given fact situation. If the government, be it state government or federal government, does not prove that a specific exception applies, the fruits of the warrantless search must be suppressed as evidence.
The state of Ohio on appeal asserts that two well-delineated exceptions apply to the search of Mr. Chiodo's motor vehicle. The first exception applies when a person consents to a warrantless search. The second exception applies in situations where the contraband or evidence would inevitably have been discovered by a later, lawful search.
The evidence at the hearing on the motion to suppress consisted solely of the testimony of Deputy Fitzpatrick. Deputy Fitzpatrick testified that he was following Matthew Chiodo's vehicle when Mr. Chiodo did not come to a complete stop at a stop sign. Deputy Fitzpatrick then "initiated a traffic stop." (Tr. 14.)
Mr. Chiodo stopped his car in front of a Dairy Mart in Darbydale on Norton Road. Deputy Fitzpatrick approached the car and requested Mr. Chiodo's driver's license or identification card. Mr. Chiodo claimed that he did not have it with him.
Deputy Fitzpatrick then asked Mr. Chiodo to get out of his car. Mr. Chiodo next was asked to place his hands on the car. The officer then frisked Mr. Chiodo to search for weapons.
Next, Deputy Fitzpatrick asked Mr. Chiodo to come back to the deputy's cruiser so they both could be in the cruiser where the deputy could check the LEADS computer records to find out license information for Mr. Chiodo.
Deputy Fitzpatrick testified that just before he placed Mr. Chiodo in the cruiser, he asked if he could search Mr. Chiodo's car and Mr. Chiodo responded "Sure, go ahead." (Tr. 16.) On cross-examination, Deputy Fitzpatrick indicated that Mr. Chiodo was locked in the backseat of the cruiser when consent to search was requested.
Deputy Fitzpatrick then searched the car and found a closed Crown Royal bag on the passenger seat. The deputy opened the bag to see what was inside and found a substance identified as cocaine.
Later, Deputy Fitzpatrick discovered that Mr. Chiodo's driver's license was under suspension. As a result, the deputy issued tickets for driving under suspension and failing to stop at a stop sign.
Deputy Fitzpatrick ordered the motor vehicle Mr. Chiodo had been driving impounded. The deputy also did an inventory search of the vehicle. In his words:
 Well, we have to do an inventory search of the vehicle to check for valuables so we can list them on the impound, and so that way there's no claims for lost property falsely or truthfully against the sheriff's office and/or possibly whoever the tow truck company that impounds the vehicle. [Tr. 21.]
Deputy Fitzpatrick described the inventory procedure for the Franklin County Sheriff's Office as follows:
 It just states that the deputy will use his discretion in the circumstances at hand to maintain the roadways and maintain people's property and their motor vehicles during initiated traffic stops.
* * *
 It just states that we shall look through the vehicle and list all valuables and properties that are within the vehicle to protect the tow truck companies and the sheriff's office from any false claims of lost property or valuables. [Tr. 23.]
Deputy Fitzpatrick also identified an exhibit at the motion to suppress hearing of a copy of "Sheriff's Regulation Number 500 for guidelines for motor vehicle impoundment, effective date February 12, 1987." (Tr. 23.) However, the exhibit was never formally submitted into evidence and is not in the appellate record before us.
When the trial court sustained the motion to suppress, the trial judge stated:
 The court finds that there was no probable search probable cause to search the car after the defendant had been removed, searched, and placed in the back of the cruiser. There was no safety issue involved. There was no reason to believe that a violation that there were guns or drugs or whatever contained within the automobile. It was not a search incident to arrest because at that time the deputy did not know that, in fact, he was driving without a valid driver's license.
 With respect to, oh, well, we would have found it anyway, that is not significant, it was found at the time of the initial search for which there was no probable cause. So additionally I find that there was no probable cause to open the crown royal bag at the time that, in fact, it was opened, and so at that time he was not in the process of impounding it. [Tr. 58-59.]
As can be inferred from the trial court's ruling, the state of Ohio tried to argue in the trial court that the search was incident to a lawful arrest. That theory has been abandoned on appeal, apparently because Deputy Fitzpatrick had no probable cause to arrest Matthew Chiodo when the search was conducted.
In its brief, the state of Ohio does not directly address the case on consent searches argued as key in the trial court. That case is State v. Robinette (1997), 80 Ohio St.3d 234. The syllabus paragraphs for the Robinette case are:
 1. When a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure. (State v. Robinette [1995], 73 Ohio St.3d 650, 653 N.E.2d 695, paragraph one of the syllabus, modified.)
 2. Under Section 14, Article I of the Ohio Constitution, the totality-of-the circumstances test is controlling in an unlawful detention to determine whether permission to search a vehicle is voluntary. (State v. Robinette [1995], 73 Ohio St.3d 650, 653 N.E.2d 695, paragraph two of the syllabus, vacated.)
 3. Once an individual has been unlawfully detained by law enforcement, for his or her consent to be considered an independent act of free will, the totality of the circumstances must clearly demonstrate that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could in fact leave. (Florida v. Royer [1983], 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229; Schneckloth v. Bustamonte [1973], 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854, followed.)
Robinette deals with a fact situation which is different in a critical regard. In Robinette, a consent to search was requested at a time the police officer no longer had a valid reason to detain the suspect. In Mr. Chiodo's situation, a valid roadside detention was occurring. Brief detention such as was occurring in Mr. Chiodo's case has been allowed by the Supreme Court of the United States in cases such as Berkemer v. McCarty (1984), 468 U.S. 420.
Thus, the Robinette case sets forth law with regard to continued detention and illegal detention law which is inapplicable here. However, the Robinette case does set forth the totality of the circumstances test to be applied in consent to search cases generally. See Schneckloth v. Bustamonte (1973), 412 U.S. 218.
The trial court never expressly addressed the question of whether or not Mr. Chiodo gave a voluntary consent to search. This is a question which should be addressed by the trial judge, who has the ability to assess the credibility of Deputy Fitzpatrick and of any other witnesses the trial court chooses to hear on the consent to search question. As an appellate court, our ability to assess the credibility of individual witnesses is, of course, limited.
We therefore sustain the first assignment of error, without making an express finding that a valid consent search was conducted. This finding regarding the voluntariness of the claimed consent should be made by the trial court on remand.
Addressing the theory that the cocaine would inevitably have been found in a later inventory search of the vehicle, the evidence before the trial court did not demonstrate the written procedures of the Franklin County Sheriff's Office with respect to inventory searches. Such a standardized policy and conformance with the standardized policy must be demonstrated for the inventory exception to apply. The policy was never placed in evidence.
Based on the record before us, we cannot know whether the policy would have required or even allowed Deputy Fitzpatrick to open the closed Crown Royal bag. The inventory policy could have required no more than a written entry that a closed Crown Royal bag was one of the items in the impounded car.
The record before us does not prove that a properly conducted inventory search occurred, so we cannot find that the cocaine would inevitably have been found in a properly conducted inventory search.
The second assignment of error is overruled.
In review, the first assignment of error is sustained. The second assignment of error is overruled. The decision of the trial court on the motion to suppress is vacated and the case is remanded for further appropriate proceedings.
Judgment reversed and case remanded.
PETREE and McCORMAC, JJ., concur.
McCormac, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.