[Cite as *State v. Wysocki*, 2025-Ohio-2915.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellant

    v.

BRANDON WYSOCKI

    Appellee

C.A. No.    24CA012161

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    24CR110431

DECISION AND JOURNAL ENTRY

Dated: August 18, 2025

---

CARR, Judge.

{¶1}    Plaintiff-Appellant the State of Ohio appeals the decision of the Lorain County Court of Common Pleas granting Defendant-Appellee Brandon Wysocki's motion to suppress. This Court affirms.

I.

{¶2}    In February 2024, an indictment was filed charging Wysocki with one count of illegal conveyance or possession of a deadly weapon or dangerous ordnance in a school safety zone in violation of R.C. 2923.122(B), (E)(1). The count included a forfeiture specification.

{¶3}    In April 2024, Wysocki filed a motion to suppress. Wysocki argued, inter alia, that there was no lawful reason he was detained nor was there a lawful reason he was searched.

{¶4}    A hearing was held on the motion. After which, the trial court issued an entry granting the motion to suppress. The trial court concluded that the State failed to demonstrate that Wysocki voluntarily consented to the search of his person prior to getting into the police cruiser.

**{¶5}** The State filed a notice of appeal and raises one assignment of error for our review. In reviewing the record, it was discovered that video evidence relied upon by the trial court was inoperable. The parties were notified, and the record was supplemented with a working copy of the exhibit.

II.

## **ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED BY GRANTING APPELLEE'S MOTION TO SUPPRESS EVIDENCE.

**{¶6}** The State argues that the trial court erred in granting Wysocki's motion to suppress. Specifically, the State maintains that Wysocki voluntarily consented to the search of his person.

**{¶7}** The Supreme Court of Ohio has stated:

Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.) *State v. Burnside*, 2003-Ohio-5372, ¶ 8.

**{¶8}** "It is well-settled that warrantless searches are per se unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions." (Internal quotations and citations omitted.) *State v. Kessler*, 53 Ohio St.2d 204, 207 (1978). One such exception is consent. *State v. Posey*, 40 Ohio St.3d 420, 427 (1988). "[W]here the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority." *Florida v. Royer*, 460 U.S. 491, 497 (1983). The

State must do so by "clear and positive" evidence. *Posey* at 427. "[W]hether a consent to search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances." (Internal quotations and citations omitted.) *Id.; see also State v. Robinette*, 80 Ohio St.3d 234, 242-243 (1997). As the trial court is in the best position to resolve factual issues, we are required to give due deference to the trial court's finding that a defendant did not voluntarily consent to a search. *See State v. Fry*, 2004-Ohio-5747, ¶ 21 (4th Dist.).

{¶9} The trial court relayed the facts as follows. On September 22, 2023, Wysocki traveled by bus with a group of high school students to a nature preserve in Lorain for a field trip. The location was not within walking distance of the school. Wysocki was responsible for a group of students and was also an employee of the school.

{¶10} During the lunch break, Wysocki was on the bus with his group of students. Another employee told Wysocki that they had to go talk. Wysocki got off the bus and the employee told Wysocki that something had happened at the school and "it was all hands on deck." The two walked along a dirt road; cars passed them and offered them a ride, but the employee insisted that they keep walking.

{¶11} A black SUV containing the vice principal and the supervisor of safety pulled up. Two police cruisers were behind the SUV. Wysocki approached the SUV and was told that he was being placed on administrative leave, he was not allowed on school property, and that he had to go with the police.

{¶12} One of the officers, Officer Robert Hargreaves, is seen on video, which was admitted into evidence, pointing to his left in a manner the trial court interpreted as directing Wysocki to the cruiser of the other officer, Officer Michael Taliano. Wysocki was trying to

determine why the police were involved and Officer Taliano indicated that the police were supposed to give Wysocki a ride.

{¶13} Officer Hargreaves testified that he and Officer Taliano met with Wysocki and told him they needed to give him some paperwork, that there was an investigation, and that Wysocki was to be taken to the school and escorted off the property. Officer Taliano told Wysocki that the school officials wanted Officer Taliano to escort Wysocki in the cruiser back to the school to get his vehicle. Officer Taliano acknowledged at the hearing that there was no reasonable suspicion that Wysocki had committed a crime or was about to commit a crime. Wysocki was not restrained or placed in handcuffs. His movement was only restricted when he later got in the police cruiser.

{¶14} Officer Taliano stated that the police were present at the request of the school to ensure that things went smoothly. Officer Hargreaves indicated that when he asked the school officials about the situation, he was told that if Wysocki did not want to go with the police, the police were to escort Wysocki off the property and he could walk back to school.

{¶15} Wysocki testified that he did not feel that he was free to leave or that he could have walked away. He was in the middle of a nature preserve and summoned to meet with school officials and police officers. Wysocki wanted to be cooperative even though he was not sure what was going on. Additionally, while not specifically mentioned by the trial court, based upon the record before this Court, it appears that Officer Taliano told Wysocki that Officer Taliano had to pat him down.[1] Then, while Wysocki was near the rear of Officer Taliano's vehicle, Wysocki was asked if he had anything on him that the police should be concerned about. Wysocki identified

---

[1] We again note that the State limited its argument on appeal to whether Wysocki voluntarily consented to the search and not whether the search was valid due to concerns for officer safety.

that he had a handgun, knife, and pepper spray on his person. Officer Taliano recovered those items during a pat down.

{¶16} In discussing why the trial court concluded that Wysocki did not voluntarily consent to the search of his person, the trial court observed:

> [Wysocki] was asked to leave the bus by another school employee under false pretenses. Officer Hargreaves testified that he and Officer Taliano met with [Wysocki] and told him that they needed to give him some paperwork; that some investigation was going on, and he ([Wysocki]) was to be taken to the school and then escorted off the school property. Vice Principal Jama told [Wysocki] that he needed to go with the police.
>
> When [Wysocki] was standing with the group that included school management and the police, Officer Hargreaves body cam shows that Officer Hargreaves pointed to his left, directing [Wysocki] to go to Officer Taliano's squad car. When [Wysocki] complied, and before he was allowed in the cruiser, he was asked if he had anything on his person and the weapons were then discovered. This all took place in a large nature preserve when [Wysocki] was facing several police officers, two police cruisers, and school management that included the Vice Principal and the Director of Safety. At no time did the officers fully explain the situation to [Wysocki] before they asked him about weapons.

{¶17} Based upon the totality of the circumstances, and in consideration of the unusual facts before us, we conclude that the State has failed to demonstrate on appeal that the trial court erred in determining the State did not meet its burden to demonstrate that Wysocki voluntarily consented to the search of his person. Wysocki was in a nature preserve and was led to an area, away from the buses that brought him there, by another employee, under false pretenses, where he ultimately encountered two school administrators, three police officers, and two police cruisers. The vice principal, while not providing any details, told Wysocki he was being placed on administrative leave and had to go with the police officers. Officer Hargreaves motioned Wysocki towards Officer Taliano. Officer Taliano told Wysocki that the school officials wanted the police to give Wysocki a ride. Officer Taliano then told Wysocki that Officer Taliano had to pat Wysocki down before asking if Wysocki had anything on his person.

**{¶18}** Here, the trial court's findings are supported by competent, credible evidence and those findings evidence that Wysocki merely submitted to a claim of lawful authority. *See Royer*, 460 U.S. at 497; *Robinette*, 80 Ohio St.3d 244-245. We cannot say that the State demonstrated below that a reasonable person in Wysocki's situation would have believed that he or she could have objected to the search; instead, the record supports that Wysocki went along with what he thought was required of him. The nature of the interaction between Wysocki and the police was more in the nature of the police instructing Wysocki as to what would happen as opposed to the police fully explaining the situation to Wysocki.

**{¶19}** The State has not demonstrated that the trial court erred in granting the motion to suppress. The State's assignment of error is overruled.

III.

**{¶20}** The State's assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

—————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---
DONNA J. CARR
FOR THE COURT

STEVENSON, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

ANTHONY CILLO, Prosecuting Attorney, and MARK ANTHONY KOZA, Assistant Prosecuting Attorney, for Appellant.

CHRISTOPHER P. REWAK, Attorney at Law, for Appellee.