This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
The State of Ohio appeals the judgment of the Medina Common Pleas Court suppressing marijuana, drug paraphernalia, and Schedule II drugs found during a search of defendant Brian Zimmerman's vehicle following a traffic stop. The State argues that the deputy's detention of defendant while conducting a drug dog sniff of defendant's vehicle was justified by a reasonable articulable suspicion of drugs based upon the deputy's observation of a marijuana seed in defendant's vehicle. This Court reverses the judgment of the trial court.
On December 13, 1997, Deputy Sheriff James Cartwright was on routine patrol near Lake Road and State Rt. 224 in southern Medina County, accompanied by his drug dog, Rocco. At approximately 11:30 p.m., Deputy Cartwright drove through a McDonald's parking lot and noticed defendant's vehicle sitting alone and backed into a parking space. Deputy Cartwright also observed that the vehicle did not have a front license plate displayed. He proceeded out of the parking lot and into an adjacent lot to continue his patrol. He then stopped to speak with Deputy Shively, who was also patrolling the area.
During this time, Deputy Cartwright observed defendant's vehicle exit the parking lot and proceed southbound on Lake Road. Based upon the absence of a front license plate, Deputy Cartwright initiated a traffic stop, and Deputy Shively assisted. Upon effectuating the stop, Deputy Cartwright approached the driver's side of the vehicle and requested the driver's identification. Defendant complied by handing Deputy Cartwright his driver's license. At this time, Deputy Cartwright observed that defendant's hands were shaking, his eyes were "very glassy," and there were air fresheners hanging on the rearview mirror. Deputy Cartwright then informed defendant that he was going to issue him a warning for the front license plate violation. However, based upon his additional observations and defendant's demeanor, Deputy Cartwright asked defendant to exit the vehicle in order to perform field sobriety tests. As defendant exited his vehicle, Deputy Cartwright observed a seed on the front driver's seat. Based upon his training and experience, Deputy Cartwright determined that the seed's appearance was consistent with that of a marijuana seed. Deputy Cartwright then had defendant's passenger exit the vehicle, and retrieved Rocco from his patrol car in order to perform a drug sniff of the vehicle.
Rocco began at the vehicle's front and worked counter-clockwise around the car. When Rocco smells an odor he has been trained to detect he alerts by scratching with his front paws in the location of the odor. As Rocco began sniffing the driver's door, he alerted at the rear of the door and then alerted a second time near the rear deck area of the vehicle. Based upon his observation of the seed and Rocco's alert to the vehicle, Deputy Cartwright asked defendant if there was marijuana in the vehicle. Defendant indicated that there was not. Deputy Cartwright then opened the driver's door and began a cursory search of the car's interior. He noticed a strong odor of burned marijuana, and a black duffel bag behind the driver's seat covered by a pair of pants. Upon checking the pockets of the pants, Deputy Cartwright noticed there was a round cylindrical object in one of the legs. After retrieving this object, Deputy Cartwright discovered it contained a green vegetable matter that was later determined to be marijuana. He then searched the black duffel bag and located a wooden box that contained a prescription pill bottle containing an illegal Schedule II drug, and also the remains of several smoked marijuana cigarettes. Deputy Cartwright concluded by searching the console area of the vehicle. He then discovered a pipe that later tested positive for the presence of marijuana. Defendant was then placed under arrest and transported to the Medina County Sheriff's Department.
On February 24, 1998, defendant moved the trial court to suppress the fruits of Deputy Cartwright's search based upon the lack of a reasonable articulable suspicion beyond the facts giving rise to the initial traffic stop of the vehicle. After a hearing, the trial court granted defendant's motion and excluded the contraband discovered by Deputy Cartwright. The State has timely appealed, presenting a single assignment of error.
 Assignment of Error The trial court erred when it granted [defendant's]motion to suppress, since the deputy at the scene hadsufficient reasonable articulable suspicion to seize[defendant] long enough to conduct a drug dog sniffaround the exterior of his vehicle.
The State avers that the trial court erred by granting defendant's motion to suppress because Deputy Cartwright had a reasonable suspicion based upon specific and articulable facts that drugs were present in defendant's vehicle, thereby justifying his further detention following a valid traffic stop. This Court agrees with the State.
The question of whether an officer has a reasonable suspicion to make an investigatory stop is to be reviewed by an appellate court de novo. Ornelas v. United States (1996), 517 U.S. 690,699, 134 L.Ed.2d 911, 919. However, "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers."Id., 134 L.Ed.2d at 920.
The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, protects "the right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures." Section 14, Article I of the Ohio Constitution has been interpreted as providing protections that are coextensive with those provided by the Fourth Amendment to the United States Constitution. State v. Robinette (1997), 80 Ohio St.3d 234, 245
("Robinette II"). Although the liberties secured by the amendment are dearly entrusted, they are not absolute. Reasonableness is the touchstone of Fourth Amendment jurisprudence. Ohio v.Robinette (1996), 519 U.S. 33, _______, 136 L.Ed.2d 347, 354, ("Robinette I"). A search conducted without a warrant supported by probable cause is per se unreasonable. Schneckloth v. Bustamonte
(1973), 412 U.S. 218, 219, 36 L.Ed.2d 854, 858. It follows that any governmental seizure, including a brief investigative stop, is prohibited unless supported by an objective justification.Terry v. Ohio (1968), 392 U.S. 1, 19, 20 L.Ed.2d 889, 904-05;State v. Andrews (1991), 57 Ohio St.3d 86, 87.
In Terry, supra, the United States Supreme Court laid the foundation of Fourth Amendment jurisprudence pertaining to investigatory stops by pronouncing the governing standard of reasonable suspicion based upon specific and articulable facts. A police officer's determination of "reasonable suspicion" is measured by an objective standard: Whether "the facts available to the officer at the moment of seizure or the search `warrant a [police officer] of reasonable caution in the belief' that the action taken was appropriate[,]" State v. Bobo (1988), 37 Ohio St.3d 177,178-179, certiorari denied (1988), 488 U.S. 910,102 L.Ed.2d 252, quoting Terry,392 U.S. at 22, 20 L.Ed.2d at 906. This question must be answered in light of the totality of the surrounding circumstances as seen "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." Andrews,57 Ohio St.3d at 87-88.
Thus, a police officer may make an investigatory stop of an automobile when specific and articulable facts exist to justify a reasonable suspicion that the driver has violated the law.Delaware v. Prouse (1979), 440 U.S. 648, 663, 59 L.Ed.2d 660,673. The Ohio Supreme Court has determined that "[w]here an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid[.]" Daytonv. Erickson (1996), 76 Ohio St.3d 3, 11-12. As such, a police officer's observation of a traffic violation generally justifies an investigatory stop. State v. Johnson (1995), 105 Ohio App.3d 37,40.
In this case, Deputy Cartwright observed defendant's vehicle traveling on Lake Road without a front license plate, a violation of R.C. 4503.21. Therefore, the initial stop was based upon probable cause that defendant was violating the law, and, as such, was not an unreasonable seizure. However, in Robinette II, 80 Ohio St. 3d at paragraph one of the syllabus, the Ohio Supreme Court held that
 [w]hen a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure.
(Citation omitted). The question then becomes whether Deputy Cartwright was justified in further detaining defendant by requesting that he exit his vehicle. Deputy Cartwright's actions can be justified in either of two ways. The United States Supreme Court held in Pennsylvania v. Mimms (1977), 434 U.S. 106, 111,54 L.Ed.2d 331, 337, n. 6, and reaffirmed in Ohio v. Robinette
(1996), 519 U.S. 33, 136 L.Ed.2d 347, 354, that it is objectively justified under the Fourth Amendment for an officer to order an individual out of his or her vehicle pursuant to a lawful traffic stop. As such, it was reasonable for Deputy Cartwright to request defendant to exit his vehicle during the course of the traffic stop. Alternatively, Deputy Cartwright testified that defendant appeared nervous, his hands were shaking, his eyes were "very glassy", and that there were air fresheners hanging from his mirror, thereby providing an additional basis for defendant's continued detention in accordance with Robinette II, that being a reasonable suspicion that defendant was operating his vehicle while under the influence of alcohol or a drug of abuse.
Finally, we turn to the issue of whether, after administering the field sobriety test and receiving no indication that defendant was under the influence of either alcohol or a drug of abuse, Deputy Cartwright was reasonably justified in further detaining defendant in order to use Rocco to conduct a drug sniff of the vehicle. This inquiry is also controlled by the standard set forth in Robinette II, and we must consider whether there existed a reasonable suspicion of illegal activity independent of those facts justifying the original detention. Deputy Cartwright testified that as defendant exited the vehicle he observed what he believed, based upon his training and experience, was a marijuana seed on the front driver's seat. Deputy Cartwright articulated to the trial court the characteristics of a marijuana seed and testified that the seed he observed was consistent with those traits. Based upon the totality of the surrounding facts and circumstances presented to Deputy Cartwright at the time he determined to further detain defendant, his actions were supported by a reasonable suspicion that drugs were present in defendant's vehicle and, therefore, were objectively reasonable in light of the Fourth Amendment. In view of this determination, Deputy Cartwright properly initiated the drug sniff of the vehicle with Rocco, and his search following Rocco's positive alert to two locations of the vehicle were in accordance with the standards of the Fourth Amendment.
Therefore, the trial court erred by determining that there was no reasonable suspicion independent of the purpose of the original stop, and, as a result, suppressing the fruits of the subsequent search of defendant's vehicle. The State's assignment of error is sustained. The judgment of the Medina County Common Pleas Court is reversed, and the cause is remanded for further proceedings consistent with this opinion.
Judgment reversed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Medina, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
FOR THE COURT
BAIRD, P. J.
QUILLIN, J.
CONCUR
(Quillin, J., retired Judge of the Ninth District Court of Appeals, sitting by assignment pursuant to Section 6 (C), Article IV, Constitution.)