DECISION.
Plaintiff-appellant, the state of Ohio, appeals the trial court's judgment granting defendant-appellee Robert Robinson's motion to suppress evidence and statements obtained from him as the result of a warrantless search and seizure.
FACTS AND PROCEEDINGS
On the evening of November 4, 1999, an individual at a bar located in Walnut Hills placed a 911 call: he informed the operator that a man with a gun was waiting for him outside the bar. After hearing a radio dispatch regarding the 911 call, Officer Clayton Neel responded to the bar. He did not observe anyone outside who matched the description given by the police dispatch. Inside the bar, however, he saw Robinson, who did match the description. In addition, the 911 complainant, who was still in the bar, indicated that Robinson was the individual whom he had called about.
Neel asked Robinson to accompany him outside, where he asked to see his identification. Officer Eric Kirkland, who had also heard the radio broadcast, then responded to the scene. Because the call was a "gun run," Kirkland handcuffed Robinson and patted him down for weapons. During the patdown, Kirkland felt a small lump in the right pocket of Robinson's jeans. Kirkland testified that he was patting Robinson down with the palms of his hands when he felt the lump; he then "checked it out a little bit closer, using [his] index finger, all [his] fingers." Kirkland testified that, after he did so, he believed that the lump was "several small little rocks" of crack cocaine.
After Kirkland felt the lump with his fingers, he asked Robinson for his consent to search his pockets. Robinson gave his consent, and Kirkland retrieved a plastic bag containing several individually wrapped pea-size pieces of crack cocaine from Robinson's right pocket.
After Robinson was arrested and read his Miranda rights, he stated "I'm not the one you want." He was then transported to the police station, where he made further statements, including admissions that he had a drug problem and that he sold crack cocaine.
Robinson was subsequently indicted for possession of cocaine and preparation of cocaine for sale. He moved to suppress both the cocaine seized from him and the statements he made to police. Following a hearing, the trial court granted Robinson's motion, concluding that although Kirkland was justified in patting Robinson down for weapons, his patdown exceeded the scope authorized by Terry v. Ohio[1] and Minnesotav. Dickerson[2] and thereby violated Robinson's Fourth Amendment right to be free from unreasonable searches. As a result, the court concluded that the fruits of the improper search should be suppressed.
 ASSIGNMENTS
In this appeal brought pursuant to R.C. 2945.67 and Crim.R. 12(J), the state asserts that the trial court erred in granting the motion to suppress. The state advances two arguments to support this contention. First, it contends that Kirkland's patdown of Robinson did not exceed the scope authorized by Terry and did not, therefore, violate the Fourth Amendment. Next, it argues that the drugs were not seized as the result of the Terry patdown, but rather, pursuant to Robinson's consent. It contends that this consent provided a separate and independent basis for Kirkland to conduct the search and to seize the drugs in the absence of a warrant. For the reasons that follow, we reject both of these arguments and conclude that the motion to suppress was properly granted.
Although neither party challenges Kirkland's initial stop or patdown of Robinson, we note that the trial court correctly determined that these actions were constitutionally permissible under Terry. The information contained in the police dispatch and relayed to Kirkland — that an eyewitness had observed a man with a gun outside the bar — provided the reasonable suspicion needed to stop Robinson;[3] it also provided the officer with a basis to pat Robinson down for weapons.[4]
Moreover, this case is distinguishable from Florida v. J.L.[5] in that the tip came from a citizen who had personally witnessed the reported behavior, and who had remained at the scene for identification, rather than from an anonymous caller whose reliability was unverifiable.[6]
Accordingly, Kirkland's initial stop and patdown of Robinson were proper. Given this, we turn to the issues specifically addressed by the parties: whether, in patting Robinson down, Kirkland exceeded the scope of the search authorized by Terry, and, if so, whether Robinson's consent served to cure this Fourth Amendment violation.
In State v. Milhouse,[7] this court recently addressed the permissible scope of a pat-down for weapons pursuant to Terry. We noted that, because the purpose of a Terry pat-down is to determine whether a person is carrying a weapon and not to discover evidence of a crime, an officer exceeds the permissible bounds of Terry if he goes beyond what is necessary to make a weapons determination.[8] But we also noted that the United States Supreme Court, in Minnesota v. Dickerson, has extendedTerry's exception to the Fourth Amendment's warrant requirement by recognizing the "plain feel" doctrine.[9] Dickerson held that if, during a lawful Terry patdown of a person's clothing, a police officer feels an object whose contour or mass makes its incriminating character as contraband immediately apparent, the officer is entitled to seize the object. The officer, however, is not permitted to manipulate the object to ascertain what it is.[10]
Here, Kirkland did not testify that he believed that the small lump in Robinson's pocket was a weapon, nor could he reasonably have believed it to be so given its size. Accordingly, he could only have lawfully seized the object if he had immediately, and without further manipulating it, recognized that it was contraband. Kirkland's testimony, however, negates such a conclusion. According to his testimony, it was only after he had used his fingers to further investigate the object that he came to believe that it was crack cocaine. Given these circumstances, the trial court correctly concluded that Kirkland's patdown of Robinson exceeded the permissible scope of Terry and resulted in a violation of the Fourth Amendment. But before we can conclude that the trial court properly suppressed the fruits of this unlawful search, we must determine the effect of Robinson's subsequent consent to have Kirkland search his pockets.
The essence of the state's argument in this respect is that the trial court erred in focusing on the Terry patdown issue, because Kirkland's seizure of the drugs actually occurred within the context of a legitimate consent search, which does not violate the Fourth Amendment. According to the state, so long as Robinson's consent was voluntarily given, it provided a separate lawful basis for Kirkland's search of him. This argument misses the mark for several reasons.
A search conducted pursuant to consent is a specifically established and well-delineated exception to the warrant requirement of the Fourth Amendment.[11] A prosecutor seeking to rely upon consent to justify the lawfulness of a search has the burden of proving that the consent was voluntary.[12] In the context of a lawful detention, voluntariness is judged by the totality of the circumstances, and it need not be proven that the defendant in fact knew that he had the right to refuse his consent.[13] But where a defendant consents while being unlawfully
detained in violation of the Fourth Amendment, courts apply a different test to judge the effectiveness of the consent. In such situations, consent is presumed in law to be tainted and is held to be invalid unless the state proves that it was not "the product of the illegal detention," but was, rather, the "result of an independent act of free will."[14]
Consent is the result of an independent act of free will when the totality of the circumstances clearly demonstrate that a reasonable person would believe that he or she has the freedom to refuse to answer further questions and may in fact leave the scene.[15] Factors that influence this determination include the length of time between the illegal detention and the subsequent search, the presence of intervening circumstances, and the purpose of the misconduct.[16]
Here, Robinson's consent was sought and obtained after Kirkland committed the Terry violation. The consent, therefore, was obtained while Robinson was illegally detained in violation of the Fourth Amendment. Furthermore, the record is devoid of any facts to support a conclusion that, in consenting, Robinson was doing anything other than submitting to a claim of lawful authority. The consent came directly on the heels of the illegal conduct: no circumstances intervened to separate the two. Accordingly, the consent was tainted as a matter of law and could not have served to validate Kirkland's warrantless search and seizure.
We conclude, therefore, that Kirkland's search of Robinson's pocket was conducted in violation of the Fourth Amendment and the fruits of this illegal search were properly suppressed by the trial court. The assignment of error is overruled, and the judgment of the trial court is affirmed.
 ___________________________ Per Curiam.
 Doan, P.J., Gorman and Sundermann, JJ.
[1] (1968), 392 U.S. 1, 88 S.Ct. 1868.
[2] (1993), 508 U.S. 366, 113 S.Ct. 2130.
[3] Terry, supra; Maumee v. Weisner (1999), 87 Ohio St.3d 295,720 N.E.2d 507.
[4] Terry, supra.
[5] (2000), 529 U.S. 266, 120 S.Ct. 1375.
[6] See Florida v. J.L., supra, (Kennedy, J., concurring); Maumee v.Weisner, supra, 87 Ohio St.3d at 300, 720 N.E.2d at 512 (discussing factors affecting reliability of a tip); State v. Siblia (2000),330 N.J. Super. 496, 750 A.2d 149.
[7] (1999), 133 Ohio App.3d 527, 728 N.E.2d 1123.
[8] See Minnesota v. Dickerson, supra.
[9] Id.
[10] Id.
[11] See Schneckloth v. Bustamonte (1973), 412 U.S. 218,93 S.Ct. 2041.
[12] Id.
[13] Id.
[14] Florida v. Royer (1983), 460 U.S. 491, 103 S.Ct. 1319; State v.Retherford (1994), 93 Ohio App.3d 586, 639 N.E.2d 498; State v.Robinette (1997), 80 Ohio St.3d 234, 685 N.E.2d 762, paragraph three of the syllabus; State v. Black (Dec. 31, 1998), Hamilton App. No. C-970874, unreported.
[15] Robinette, supra.
[16] Retherford, supra.