DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Marietta Municipal Court judgment of conviction and sentence. The jury found Edward Hehr, the defendant below and the appellant herein, guilty of operating a motor vehicle under the influence of alcohol in violation of R.C. 4511.19(A)(6).
 {¶ 2} Appellant assigns the following error for review:
"The trial court committed reversible error when it denied mr. hehr's motion to suppress, in violation of thefourth amendment to the united states constitution and section 14, article I of the constitution."
 {¶ 3} On October 6, 2003, the appellant filed a "motion to dismiss" the criminal complaint that charged the appellant with a R.C. 4511.19 violation.[2] On January 26, 2004, the trial court conducted a hearing to consider the appellant's motion. At the hearing, the evidence revealed that on August 30, 2003 at approximately 2:30 am, Marietta College Police Department Officer Sarah Dietz observed a vehicle make a wide turn at an intersection. Officer Dietz stated that the vehicle entered "almost entirely into the northbound [oncoming traffic] lane." Auxiliary Marietta College Police Officer Douglas Ankrom, a passenger in Dietz's cruiser, also observed the infraction. Dietz then stopped the vehicle.
 {¶ 4} Officer Dietz walked to the vehicle's driver's side window and observed the appellant behind the steering wheel. Dietz also detected the odor of alcohol. Both officers noted that the appellant swayed while standing and that he admitted to consuming a "few" beers. After the appellant, at Dietz's request, performed standardized physical coordination tests, Dietz arrested the appellant for operating a vehicle while under the influence of alcohol.
 {¶ 5} After an officer transported the appellant to the police department for a breath-alcohol test, Patrolman Greg Wenzel administered the BAC Data Master test and the appellant tested .181. Patrolman Wenzel also observed that the appellant had bloodshot eyes, slightly slurred speech, and a strong odor of alcohol.
 {¶ 6} At the motion hearing, both the appellant and his ex-wife, a passenger in the appellant's vehicle, testified. Both stated that the appellant consumed snuff during the traffic stop and that he received inadequate instructions concerning the physical coordination tests. Additionally, evidence adduced at the hearing revealed that Officer Dietz did not fully comply with all of the physical coordination test requirements when she administered the appellant's tests.
 {¶ 7} At the conclusion of the hearing, the trial court denied the appellant's "motion to dismiss" and determined that Officer Dietz possessed probable cause to arrest the appellant. The court noted:
"Even if I discount these two tests (the FST), I believe, following what the Supreme Court in Homan did say is that you look at the totality of the circumstances, what did the officers have.
Well, they certainly saw some bad driving, and had a reasonable and articulable suspicion to stop the defendant to issue a citation for that offense.
They had his admission that he had been consuming alcohol; they could smell alcohol; they could see him swaying, as they talked to him.
This is all before he was arrested. Now, of course, these tests were administered.
Even if I discount that, I think at that point they've got enough from the totality of the circumstances to arrest him for the offense of operating under the influence, . . .
Having said all of these things, and made these findings, I am going to deny both motions."
 {¶ 8} Thus, although the trial court concluded that the coordination tests were not performed under strict compliance with the National Highway Traffic Safety Administration's (NHTSA) manual, and thus violated the rule set out in State v. Homan(1999), 89 Ohio St.3d 421, 732 N.E.2d 952, the officers
nevertheless possessed probable cause, apart from the coordination tests, to arrest the appellant for driving while under the influence of alcohol.
 {¶ 9} On March 9, 2004, the appellant entered a no contest plea to the R.C. 4511.19(A)(6) violation. The trial court accepted the appellant's plea, found him guilty and pronounced sentence.
 {¶ 10} In his sole assignment of error, the appellant asserts that the trial court erred by overruling his "motion to suppress evidence." In particular, the appellant contends that Officer Dietz failed to comply with the NHTSA manual when she administered the physical coordination tests and, consequently, the test results cannot provide probable cause for the appellant's arrest. Appellant further asserts that if the trial court had "properly excluded the results of the field sobriety tests, the prosecutor would not have been able to use that evidence at trial," and that the "trial court's error certainly influenced Mr. Hehr's decision to plead no contest." It appears that the remedy that the appellant sought in the trial court based upon the improperly administered physical coordination tests was an outright dismissal of the case.
 {¶ 11} Appellee contends that the trial court denied the appellant's motion to dismiss based upon its finding that other evidence adduced at the hearing, apart from the physical coordination tests, established that the officers possessed probable cause to arrest the appellant for operating a motor vehicle while under the influence of alcohol. The officers' observations of the appellant, including the appellant's: (1) odor of alcohol; (2) admission that he consumed alcohol; (3) vehicle operation; (4) swaying during the initial traffic stop; (5) bloodshot eyes; and (6) slurred speech provides a sufficient basis for the trial court's determination that he officers possessed probable cause to arrest the appellant.
 {¶ 12} Initially, we note that appellate review of a trial court's decision regarding a motion to suppress evidence involves a mixed question of law and fact. See State v. Long (1998),127 Ohio App.3d 328, 332, 713 N.E.2d 1, 3. When ruling on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See State v. Fanning
(1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583, 584; State v.Dunlap (1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988, 995. Accordingly, a reviewing court must defer to a trial court's findings of fact if competent, credible evidence exists to support the trial court's findings. See State v. Smith (1997),80 Ohio St.3d 89, 105, 684 N.E.2d 668; Long, supra; State v.Medcalf (1996), 111 Ohio App.3d 142, 675 N.E.2d 1268. The reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. See Long;State v. Williams (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141;State v. Fields (Nov. 29, 1999), Hocking App. No. 99 CA 11, unreported. See, generally, Ornelas v. United States (1996),517 U.S. 690, 116 S. Ct. 1657, 134 L. Ed. 2d 911; State v. Wise
(Sept. 12, 2001), Summit App. No. 20443, unreported.
 {¶ 13} The Fourth Amendment to the United States Constitution
protects individuals against unreasonable governmental searches and seizures. See, e.g., Delaware v. Prouse (1979),440 U.S. 648, 662, 99 S.Ct. 1391, 59 L.Ed.2d 660. "Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." Katz v. United States (1967),389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576.
 {¶ 14} A traffic stop initiated by a law enforcement officer implicates the Fourth Amendment. Whren v. United States (1996),517 U.S. 806, 809, 116 S.Ct. 1769, 135 L.Ed.2d 89. Such a traffic stop must comply with the Fourth Amendment's general reasonableness requirement. In Whren, the Supreme Court recognized that the Fourth Amendment's reasonable requirement is fulfilled and a law enforcement officer may constitutionally stop the driver of a vehicle when the officer possesses probable cause to believe that the driver of the vehicle has committed a traffic violation. Id. The court stated:
"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a seizure of `persons' within the meaning of [the Fourth Amendment]. * * * An automobile stop is thus subject to the constitutional imperative that it not be `unreasonable' under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. * * *."
 {¶ 15} Id., 517 U.S. at 809-10, 116 S.Ct. 1769,135 L.Ed.2d 89 (citations omitted); see, also, Dayton v. Erickson (1996),76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091, 1097-98.
 {¶ 16} Once an officer has lawfully stopped a vehicle, the officer must "carefully tailor" the scope of the stop "to its underlying justification," and the stop must "last no longer than is necessary to effectuate the purpose of the stop." Florida v. Royer (1983), 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229; see, also, State v. Gonyou (1995), 108 Ohio App.3d 369, 372,670 N.E.2d 1040, 1041; State v. Birchfield (Aug. 26, 1997), Ross App. No. 97 Ca 2281, unreported. An officer may lawfully expand the scope of the stop and may lawfully continue to detain the individual if the officer discovers further facts which give rise to a reasonable suspicion that additional criminal activity is afoot. See, e.g., Terry, supra; State v. Robinette
(1997), 80 Ohio St.3d 234, 240, 685 N.E.2d 762.
 {¶ 17} Thus, if a law enforcement officer, during a valid traffic stop, ascertains "reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual." Id., 80 Ohio St.3d at 241, 685 N.E.2d at 768. Consequently, when a law enforcement officer stops an individual for a minor traffic offense, generally the officer may not expand the scope of the stop unless the officer observes additional facts giving rise to a reasonable suspicion of other criminal activity.
 {¶ 18} An officer conducting a routine traffic stop may, therefore, expand the stop's scope in order to investigate whether the individual stopped is under the influence of alcohol and may continue to detain the individual to confirm or dispel his suspicions if the officer observes additional facts during the routine stop which reasonably lead him to suspect that the individual may be under the influence. See State v. Angel
(Sept. 21, 2001), Miami App. No. 2001-CA-11, unreported; Statev. Strausbaugh (Dec. 3, 1999), Montgomery App. No. 17629, unreported; State v. Strassman (Nov. 20, 1995), Athens App. No. 98 CA 10, unreported. As the court explained in State v. Yemma
(Aug. 9, 1996), Portage App. No. 95-P-0156, unreported:
"Once the officer has stopped the vehicle for some minor traffic offense and begins the process of obtaining the offender's license and registration, the officer may then proceed to investigate the detainee for driving under the influence if he or she has a reasonable suspicion that the detainee may be intoxicated based on specific and articulable facts, such as where there are clear symptoms that the detainee is intoxicated."
 {¶ 19} See, also, State v. Downey (1987),37 Ohio App.3d 45, 46, 523 N.E.2d 521, 522-23 (stating that an officer "is not prohibited from further field investigation and observations to assure that a driver who is possibly under the influence is not allowed to continue driving in that condition"); State v.Matlack (Nov. 2, 1995), Athens App. No. 95 CA 1658, unreported (stating that an officer may continue to detain a driver who is stopped for a left of center violation if the officer discovers further facts that the driver is "probably under the influence");State v. Litteral (June 14, 1994), Pike App. No. 93 CA 510, unreported.
 {¶ 20} In Litteral, we reviewed prior cases that discussed whether the presence of certain facts justified an officer's continued detention of a lawfully stopped individual to investigate whether the individual had been driving while under the influence:
"In [State v.] Chelikowsky [Aug. 18, 1992), Pickaway App. No. 91 CA 27, unreported], we held that weaving and a strong odor of alcohol were sufficient to justify conducting field sobriety tests. We held that glassy bloodshot eyes and an odor of alcohol were sufficient to warrant field sobriety tests in State v.Whitt (Nov. 9, 1993), Lawrence App. No. 93 CA 11, unreported at 5-6, as is even a moderate odor of alcohol by itself. State v.Turner (Jan. 8, 1993), Highland App. No. 812, unreported at 6. Indeed, our own research indicates that, in most instances, when an initial stop is justified by reasonable suspicion of wrongdoing, a disoriented demeanor and/or odor of alcohol provides further impetus for more intrusive investigative procedures. See, e.g., State v. Gottfried (1993),86 Ohio App.3d 106, 619 N.E.2d 1185; Columbus v. Comer (Dec. 21, 1993), Franklin App. No. 93 AP-960, unreported.
 {¶ 21} In the case sub judice, we note that Officer Dietz lawfully expanded the scope of the routine traffic stop and lawfully continued to detain the appellant in order to confirm or dispel her suspicions that the appellant was driving while under the influence of alcohol.
 {¶ 22} We also agree with the appellant, as, in fact, did the trial court that evidence regarding the appellant's performance of physical coordination tests should not have been admissible at trial. In Homan, the Ohio Supreme Court held that before a court may consider the results of field sobriety tests as evidence of probable cause to arrest, the officer "must have administered the test in strict compliance with standardized testing procedures [NHTSA]." Id., paragraph one of the syllabus. In so concluding, the court observed that the reliability of field sobriety tests "depends largely upon the care with which they are administered." Id.,89 Ohio St.3d at 425, 732 N.E.2d at 956.
 {¶ 23} In the case sub judice, the trial court found, and the officer conceded, that the officer did not administer the field sobriety tests in strict compliance with the established standardized testing procedures. Thus, in determining whether probable cause to arrest existed, we agree with the appellant (and with the trial court) that the trial court could not consider the appellant's performance of physical coordination tests.
 {¶ 24} Our review of the record and the trial court's judgment reveals that the trial court did, in fact, determine that the field sobriety tests were not administered in compliance with the NHTSA testing procedure and, thus, could not be considered in determining probable cause. The trial court further determined, however, that probable cause existed in this case apart from the appellant's field sobriety test performance. We again note that in Homan, the court noted that the totality of the facts and circumstances can support a finding of probable cause to arrest, even when no field sobriety test are administered or when the test results must be excluded for lack of strict compliance.
 {¶ 25} In determining whether probable cause to arrest exists, the totality of the facts and circumstances must be "sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Beck v.Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142;Gerstein v. Pugh (1975), 420 U.S. 103, 111-112, 95 S.Ct. 854,43 L.Ed.2d 54; State v. Tibbetts (2001), 92 Ohio St.3d 146,153, 749 N.E.2d 226, 242. In State v. Medcalf (1996),111 Ohio App.3d 142, 147, 675 N.E.2d 1268, 1271, we explained when an officer possesses probable cause to arrest an individual for a violation of R.C. 4511.19:
"To determine whether an officer had probable cause to arrest an individual for a violation of R.C. 4511.19(A), the court must examine whether, at the moment of the arrest, the officer had knowledge from a reasonably trustworthy source of facts and circumstances sufficient to cause a prudent person to believe that the suspect was driving while under the influence of alcohol. * * * * An arrest for driving under the influence need only be supported by the arresting officer's observations of indicia of alcohol consumption and operation of a motor vehicle while under the influence of alcohol."
 {¶ 26} Id., 111 Ohio App.3d at 147-148, 675 N.E.2d at 1271
(citations omitted).
 {¶ 27} In the case sub judice, we agree with the trial court's conclusion that the totality of the circumstances known to the officers demonstrate that the officers possessed probable cause to arrest the appellant for a R.C. 4511.19 violation. Again, the officers observations of the appellant, including the appellant's: (1) odor of alcohol; (2) admission that he consumed alcohol; (3) vehicle operation; (4) swaying during the initial traffic stop; (5) bloodshot eyes; and (6) slurred speech, provides a sufficient basis for the trial court's determination that the officers possessed probable cause.
 {¶ 28} Further, we note that the trial court did all that the appellant asked it to do — to decide whether the field sobriety tests complied with the NHTSA standards and whether the case should be "dismissed" based upon the officer's failure to comply with those standards. The trial court first determined that the tests did not comply with the regulations and correctly refused to consider those results in deciding the probable cause issue. The court did not, however, conclude that the improper field sobriety tests demanded that the entire case be "dismissed."
 {¶ 29} We additionally note that the appellant did not, at that time, explicitly request the trial court to "suppress" the results of the field sobriety tests at trial. It is obvious, however, that had this matter proceeded to trial the court would have, in light of its ruling, excluded those results from the evidence.
 {¶ 30} Thus, based upon our review of this matter, we believe that the appellant's plea is not in any way tainted, or is less than a voluntary and knowing action. Accordingly, based upon the foregoing reasons we hereby overrule the appellant's sole assignment of error and affirm the trial court's judgment.
 JUDGMENT AFFIRMED.
JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. Kline, J.: Concur in Judgment Opinion.
[2] Generally, a defendant should file a motion to suppress evidence when the remedy sought is to prevent the use of certain evidence at trial. A motion to dismiss is generally used when a defendant requests a court to dismiss an entire action based upon some clearly defined transgression (e.g. defects in indictment or complaint, speedy trial violations, discovery violations). In the instant case, it appears that the appellant requested the trial court to "dismiss" the criminal charges based upon improperly administered physical coordination tests. We parenthetically note that no provision exists in Ohio's Criminal Rules for a motion to dismiss a case based upon the lack of probable cause. SeeBlanchester v. Hester (1992), 81 Ohio App.3d 815,612 N.E.2d 412, 415; State v. Hartley (1988), 51 Ohio App.3d 47, 48,554 N.E.2d 950, 951. The proper remedy for Fourth Amendment
violations is suppression of the evidence, not dismissal of the charges. No provision exists in the Rules of Criminal Procedure for summary judgment or a pretrial motion to challenge the legal sufficiency of the evidence. State v. Varner 91991),81 Ohio App.3d 85, 86, 610 N.E.2d 476, 477; Sate v. McNamee 91984),17 Ohio App.3d 175, 17 OBR 306, 478 N.E.2d 843.
We further note that the appellant appears to have abandoned this strategy on appeal and now asserts that the trial court erred by failing to "suppress" the results of the physical coordination tests. We address this issue in our opinion.