DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Marietta Municipal Court judgment of conviction and sentence for driving while under the influence of alcohol in violation of R.C. 4511.19.
 {¶ 2} Dennis S. Marcinko, defendant below and appellant herein, raises the following assignments of error for review:
 FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN FINDING THAT STANDARDIZED FIELD SOBRIETY TESTS WERE CONDUCTED IN SUBSTANTIAL COMPLIANCE WITH *Page 2 
NHTSA STANDARDS."
 SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN FAILING TO DETERMINE THAT THE OFFICER POSSESSED A REASONABLE, ARTICULABLE SUSPICION ON WHICH TO CONDUCT A FURTHER INVESTIGATORY STOP AFTER CONDUCTING A NON-INVESTIGATORY STOP FOR A TRAFFIC VIOLATION."
 THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN FINDING PROBABLE CAUSE FOR DEFENDANT'S ARREST."
 {¶ 3} On February 5, 2006, at approximately 2:30 a.m., Washington County Sheriff's Deputy Brian Rhodes observed appellant's vehicle traveling sixty miles per hour in a fifty mile per hour zone. After the deputy stopped appellant's vehicle for speeding, he noticed an odor of alcohol and observed that appellant made "some very slow movements inside the vehicle" while he looked for his registration. Deputy Rhodes then asked appellant how much he had to drink and appellant stated that he "drank one beer," and that at another point, stated that he "drank five." Deputy Rhodes also noticed in the back seat a case of beer with its top open.
 {¶ 4} Deputy Rhodes requested appellant to perform field sobriety tests. The deputy testified that he explained the instructions for the one-leg stand test to appellant as follows:
 "I told him to keep his hands to his side. That he was going to be able to choose a foot, either foot, I didn't care which one, raise his foot approximately six inches off the ground, keeping his leg straight.
 After he did that, he was to look down to the tip of his toes, and count one thousand one; one thousand two; one thousand three; all the way up to one thousand thirty, unless I told him to stop prior." *Page 3 
Deputy Rhodes stated that appellant did not keep his arms at his side and used his arms for balance. As he raised his foot, appellant "kind of lost his balance, and caught himself on the bumper, front area of my cruiser." Appellant then attempted to do the test again. After he reached one thousand five, appellant put his foot down again and lost his balance. Deputy Rhodes then discontinued the test and administered the walk-and-turn test. The deputy testified:
 "I advised [appellant] that there was a straight line. Put his left foot on the line and his right foot in front. He was going to take a total of nine heel to toe steps, counting each one.
 When he got to the ninth step, he was going to use small steps and pivot around, put his foot back in front, continue the nine heel to toe continuous steps."
Deputy Rhodes stated that after appellant raised his hands for balance, stepped off the line and missed heel to toe,[1] he arrested appellant for driving while under the influence of alcohol.
 {¶ 5} Appellant filed a "motion in limine/motion to dismiss" and requested that the court prohibit the introduction at trial any evidence that related to the field sobriety tests. Appellant asserted that Deputy Rhodes did not administer the tests in substantial compliance with National Highway Traffic Safety Administration (NHTSA) standards. Appellant also requested the court to dismiss the case because the officer lacked probable *Page 4 
cause to arrest him.
 {¶ 6} At the motion hearing, appellant claimed that Deputy Rhodes did not administer the field sobriety tests in substantial compliance with NHTSA standards that require dry, calm weather conditions and a level surface. Deputy Rhodes testified that a light snow fell as he administered tests, but that "the pavement was pretty dry still" and the ground was not slippery. The deputy further stated that it was windy, but that he did not know the wind speed. He also testified that he administered the tests on an incline, but that he could not estimate the degree of the incline.
 {¶ 7} Appellant testified that the pavement was slippery, that the incline was about twenty-five degrees and that he fell during the tests because the wind blew him over.
 {¶ 8} After hearing the evidence, the trial court overruled appellant's "motion in limine/motion to dismiss." The court found that the officer administered the one-leg stand and the walk-and-turn tests in substantial compliance with NHTSA standards. Regarding the one-leg stand test, the court stated: "The wind and other weather conditions in that short period of time from the HGN test to the one leg stand did not change. It was still windy, snowing/raining, cold and wet. What is obvious is the Defendant performed this particular divided attention skills test poorly." Regarding the walk-and-turn test, the court stated: "Much of the officer's demonstration and all of his oral instructions for completing this test were captured by the *Page 5 
videotape. They were given in compliance with standards. Most of the Defendant's performance of this test is off the left side of the camera field. The videotape did record that Defendant raised his arms several times for balance. This is consistent with the officer's testimony." The court also found that (1) the officer observed that appellant had bloodshot eyes and had a strong odor of alcohol; and (2) appellant admitted to drinking beer. Appellant subsequently pled no contest and this appeal followed.
 I {¶ 9} Before we address appellant's assignments of error, we note some procedural irregularities with his "motion in limine/motion to dismiss."
 {¶ 10} A "motion in limine" is "`[a] pretrial motion requesting [the] court to prohibit opposing counsel from referring to or offering evidence on matters so highly prejudicial to [the] moving party that curative instructions cannot prevent [a] predispositional effect on [the] jury.'" State v. French (1995), 72 Ohio St.3d 446, 449,650 N.E.2d 887, quoting Black's Law Dictionary (6Ed. 1990) 1013. "The purpose of a motion in limine `is to avoid injection into [the] trial of matters which are irrelevant, inadmissible and prejudicial[,] and granting of [the] motion is not a ruling on evidence and, where properly drawn, granting of [the] motion cannot be error.'" Id. at 449-450, quoting Black's Law Dictionary, at 1013-1014. A ruling on a motion in limine is an interlocutory ruling as to the *Page 6 
potential admissibility of evidence at trial. Id. at 450. Thus, it cannot serve as the basis for reviewing error on appeal. See State v.Grubb (1986), 28 Ohio St.3d 199, 201-02, 503 N.E.2d 142; Krotine v.Neer, Franklin App. No. 02AP-121, 2002-Ohio-7019, at ¶ 10. "`An appellate court need not review the propriety of such an order unless the claimed error is preserved by a timely objection when the issue is actually reached during the trial.'" Grubb, 28 Ohio St.3d at 203, quoting State v. Leslie (1984), 14 Ohio App.3d 343, 344, 471 N.E.2d 503. When there is no trial, there can be no evidentiary ruling for the court to review. State v. Sanchez, Defiance App. No. 4-05-47, 2006-Ohio-2141, at ¶ 5. Consequently, "[a] no contest plea does not preserve for appellate review the trial court's ruling on a motion in limine."State v. Lewis, 164 Ohio App.3d 318, 2005-Ohio-5921, 842 N.E.2d 113, at ¶ 6; State v. Brock, Hancock App. No. 5-06-27, 2006-Ohio-6681, at ¶ 8
(stating that a party may not plead no contest to preserve for appellate review the trial court's ruling on a motion in limine). Thus, to the extent appellant challenges the trial court's decision overruling his "motion in limine," the issue is not properly before this court.
 {¶ 11} Furthermore, we cannot consider a claim that the trial court erred by overruling his motion to dismiss. Appellant argued that the court should dismiss the charges because without the results of the allegedly improperly administered field sobriety tests, the officer lacked probable cause to arrest him. "Under Ohio's criminal procedure, there is no provision for a *Page 7 
motion to dismiss a criminal case founded on the lack of probable cause. The determination of whether or not probable cause exists is the very function of the trial." State v. Hartley (1988), 51 Ohio App.3d 47, 48,554 N.E.2d 950. In the case at bar, we believe that appellant should have filed a motion to suppress the field sobriety test results rather than a motion to dismiss. See State v. Hehr, Washington App. No. 04CA10,2005-Ohio-353; State v. Flanagan, Lawrence App. No. 03CA11,2003-Ohio-6512.
 {¶ 12} Our inquiry will not end at this juncture, however. Our review of the record reveals that the trial court conducted a hearing, took evidence, and treated appellant's motion as one to suppress. In the interest of justice, we will do the same. See Flanagan. Accordingly, we construe appellant's three assignments of error as arguing that the trial court erred by overruling his motion to suppress.
 II {¶ 13} Because appellant's assignments of error involve the trial court's decision to overrule his motion to suppress, we first set forth our standard of review.
 {¶ 14} Appellate review of a trial court's decision regarding a motion to suppress evidence involves a mixed question of law and fact. SeeState v. Long (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1. When ruling on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See State v.Fanning (1982), *Page 8 1 Ohio St.3d 19, 20, 437 N.E.2d 583; State v. Dunlap (1995), 73 Ohio St.3d 308,314, 652 N.E.2d 988. Accordingly, a reviewing court must defer to a trial court's findings of fact if competent, credible evidence exists to support the trial court's findings. See State v. Smith (1997),80 Ohio St.3d 89, 105, 684 N.E.2d 668; Long, supra; State v. Medcalf (1996),111 Ohio App.3d 142, 675 N.E.2d 1268. The reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. See Long; State v. Williams (1993), 86 Ohio App.3d 37,619 N.E.2d 1141; State v. Fields (Nov. 29, 1999), Hocking App. No. 99CA11. See, generally, Ornelas v. United States (1996), 517 U.S. 690,116 S.Ct. 1657, 134 L.Ed.2d 911.
 III {¶ 15} In his first assignment of error, appellant asserts that the trial court erred by overruling his motion to suppress the results of the field sobriety tests. In particular, appellant asserts that the officer failed to administer the walk-and-turn test and the one-leg stand test in substantial compliance with NHTSA standards because the officer performed the tests on an incline with wet and slippery pavement and when winds gusted from thirty to forty miles per hour; when the NHTSA requires tests to be performed on a dry, level surface. Appellant additionally asserts that no evidence supports the trial court's finding that appellant had bloodshot eyes.
 {¶ 16} In 2000, the Ohio Supreme Court held that strict *Page 9 
compliance with standardized testing procedures is required for field sobriety test results to serve as evidence of probable cause to arrest.State v. Homan (2000), 89 Ohio St.3d 421, 732 N.E.2d 952, paragraph one of the syllabus. Subsequently, the Ohio General Assembly revised R.C.4511.19 to require only substantial compliance with standardized procedures for the results of field sobriety tests to be admissible.State v. Lytle, Medina App. No. 04CA0016-M, 2004-Ohio-4964, at ¶ 5. The amended statute permits the state to introduce the results of field sobriety tests if:
 "[A] law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration."
R.C. 4511.19(D)(4)(b). We note, however, that R.C. 4511.19(D)(4)(b) does not define the term "substantial compliance." "A determination whether the facts satisfy the substantial compliance standard is made on a case by case basis." State v. Mapes, Fulton App. No. F-04-031,2005-Ohio-3359, citing State v. Robinson, 160 Ohio App.3d 802,2005-Ohio-2280, 828 N.E.2d 1050, at ¶ 45.
 {¶ 17} In the case at bar, appellant complains that the tests were not conducted in substantial compliance with NHTSA standards because the officer did not perform the tests on a dry, level *Page 10 
surface. We disagree with appellant. First, we point out that the officer stated that the pavement was dry and not slippery. Thus, the trial court had evidence, if believed, to support the view that the surface at that time was dry. Moreover, even if the surface was wet, performing a field sobriety test under less than ideal conditions should not always negate the results of that test. Failing to conduct field sobriety tests under the ideal conditions specified in NHTSA will not always show lack of substantial compliance. See Homan,89 Ohio St.3d at 430 (Stratton, J., dissenting in part and concurring in part). Moreover, a defendant remains free to argue that the adverse conditions render the test results unreliable. However, but if a test substantially complies with the NHTSA requirements, a trial court need not exclude the test results from evidence at trial. Id. For these same reasons, we disagree with appellant that the officer's failure to conduct the tests on a level surface or the allegedly strong winds requires the conclusion that the tests did not substantially comply with NHTSA.
 {¶ 18} Appellant further argues that the trial court erred by finding that Deputy Rhodes observed that appellant's eyes were bloodshot. Appellant correctly notes that the officer did not present this testimony at the hearing. The record, however, contains the officer's notes from the traffic stop in which he states that he observed that appellant's eyes were bloodshot. Thus, some evidence exists in the record to support the trial court's finding. *Page 11 
 {¶ 19} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's first assignment of error.
 IV {¶ 20} Appellant combines the argument for his second and third assignments of error. We note, however, that while appellate courts may jointly consider two or more assignments of error, the parties do not have the same option in presenting their arguments. See, e.g.,State v. Bloomfield, Ross App. No. 03CA2720, 2004-Ohio-749, at ¶ 10, fn. 2. Appellate courts may thus disregard any assignments of error that are not separately argued. App.R. 12(A)(2). Thus, we would be within our authority to simply disregard appellant's second and third assignments of error and summarily affirm the trial court's judgment. See Park v.Ambrose (1993), 85 Ohio App.3d 179, 186, 619 N.E.2d 469; State v.Caldwell (1992), 79 Ohio App.3d 667, 677, 607 N.E.2d 1096, at fn. 3. Nevertheless, in the interests of justice we will review appellant's second and third assignments of error. See In re Jack Fish Sons Co.,Inc., 159 Ohio App.3d 649, 2005-Ohio-545, 825 N.E.2d 171.
 {¶ 21} In his second assignment of error, appellant asserts that the trial court erred by failing to consider whether the officer possessed sufficient reasonable suspicion to detain appellant to conduct field sobriety tests. Appellant argues that the officer's detection of an odor of alcohol did not warrant further investigation and that the officer did not observe any other behavior to arouse his suspicions. In his third assignment *Page 12 
of error, appellant contends that in the absence of the field sobriety tests, the officer lacked probable cause to arrest him.
 A WAIVER {¶ 22} Initially, we note that appellant's "motion in limine/motion to dismiss" did not sufficiently identify the lack of reasonable suspicion to detain him to conduct field sobriety tests. In Xenia v. Wallace
(1998), 37 Ohio St.3d 216, 218-219, 524 N.E.2d 889, the court explained:
 "The prosecutor must know the grounds of the challenge in order to prepare his case, and the court must know the grounds of the challenge in order to rule on evidentiary issues at the hearing and properly dispose of the merits. Therefore, the defendant must make clear the grounds upon which he challenges the submission of evidence pursuant to a warrantless search or seizure. Failure on the part of the defendant to adequately raise the basis of his challenge constitutes a waiver of that issue on appeal."
(Citations omitted); see, also, State v. Shindler (1994), 70 Ohio St.3d. 54, 636 N.E.2d 319.
 {¶ 23} In the case at bar, we do not believe that appellant adequately raised the lack of reasonable suspicion issue so as to fully advise the prosecutor and the court of the issue. Appellant candidly and forthrightly admits that the words "reasonable suspicion" appear nowhere in his "motion in limine/motion to dismiss." Appellant argues that his citation to Cleveland v. Sanders, Cuyahoga App. No. 83073,2004-Ohio-4473, a case that involved reasonable suspicion, means that he sufficiently raised the issue. We disagree. A citation to a case that addresses reasonable suspicion, without any other *Page 13 
indication that lack of reasonable suspicion is an issue, provides insufficient notice to the prosecutor and the court. Thus, because he did not adequately raise lack of reasonable suspicion as an issue in his motion, he failed to preserve the issue for appellate review. In the interest of justice, however, assuming, arguendo, that appellant had not waived the issue, we find no merit to his argument.
 B REASONABLE SUSPICION {¶ 24} The Fourth Amendment to the United States Constitution protects individuals against unreasonable governmental searches and seizures. See, e.g., Delaware v. Prouse (1979), 440 U.S. 648, 662, 99 S.Ct. 1391,59 L.Ed.2d 660. "Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." Katz v. United States
(1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576.
 {¶ 25} A traffic stop initiated by a law enforcement officer implicates the Fourth Amendment. Whren v. United States (1996),517 U.S. 806, 809, 116 S.Ct. 1769, 135 L.Ed.2d 89. Such a traffic stop must comply with the Fourth Amendment's general reasonableness requirement. In Whren, the Supreme Court recognized that the Fourth Amendment's reasonable requirement is fulfilled and a law enforcement officer may constitutionally stop the driver of a vehicle when the officer possesses probable cause *Page 14 
to believe that the driver of the vehicle has committed a traffic violation. Id. The court stated:
 "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a seizure of `persons' within the meaning of [the Fourth Amendment]. * * * An automobile stop is thus subject to the constitutional imperative that it not be `unreasonable' under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. * * * ."
Id. at 809-10 (citations omitted); see, also, Dayton v. Erickson (1996),76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091.
 {¶ 26} Once an officer has lawfully stopped a vehicle, the officer must "carefully tailor" the scope of the stop "to its underlying justification," and the stop must "last no longer than is necessary to effectuate the purpose of the stop." Florida v. Royer (1983),460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229; see, also, State v.Gonyou (1995), 108 Ohio App.3d 369, 372, 670 N.E.2d 1040; State v.Birchfield (Aug. 26, 1997), Ross App. No. 97CA2281. An officer may lawfully expand the scope of the stop and may lawfully continue to detain the individual if the officer discovers further facts which give rise to a reasonable suspicion that additional criminal activity is afoot. See, e.g., Terry, supra; State v. Robinette (1997),80 Ohio St.3d 234, 240, 685 N.E.2d 762.
 {¶ 27} Thus, if a law enforcement officer, during a valid traffic stop, ascertains "reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the *Page 15 
individual." Robinette, 80 Ohio St.3d at 241. Consequently, when a law enforcement officer stops an individual for a minor traffic offense, generally the officer may not expand the scope of the stop unless the officer observes additional facts giving rise to a reasonable suspicion of other criminal activity.
 {¶ 28} An officer conducting a routine traffic stop may, therefore, expand the stop's scope in order to investigate whether the individual stopped is under the influence of alcohol and may continue to detain the individual to confirm or dispel his suspicions if the officer observes additional facts during the routine stop which reasonably lead him to suspect that the individual may be under the influence. See State v.Angel (Sept. 21, 2001), Miami App. No. 2001-CA-11; State v.Strausbaugh (Dec. 3, 1999), Montgomery App. No. 17629; State v.Strassman (Nov. 20, 1995), Athens App. No. 98CA10. As the court explained in State v. Yemma (Aug. 9, 1996), Portage App. No. 95-P-0156:
 "Once the officer has stopped the vehicle for some minor traffic offense and begins the process of obtaining the offender's license and registration, the officer may then proceed to investigate the detainee for driving under the influence if he or she has a reasonable suspicion that the detainee may be intoxicated based on specific and articulable facts, such as where there are clear symptoms that the detainee is intoxicated."
See, also, State v. Downey (1987), 37 Ohio App.3d 45, 46, 523 N.E.2d 521
(stating that an officer "is not prohibited from further field investigation and observations to assure that a driver who is possibly under the influence is not allowed to continue driving in that condition"); State v. Matlack (Nov. 2, *Page 16 
1995), Athens App. No. 95CA1658 (stating that an officer may continue to detain a driver who is stopped for a left of center violation if the officer discovers further facts that the driver is "probably under the influence"); State v. Litteral (June 14, 1994), Pike App. No. 93CA510.
 {¶ 29} In Litteral, we reviewed prior cases that discussed whether the presence of certain facts justified an officer's continued detention of a lawfully stopped individual to investigate whether the individual had been driving while under the influence:
 "In [State v.] Chelikowsky [Aug. 18, 1992), Pickaway App. No. 91CA27], we held that weaving and a strong odor of alcohol were sufficient to justify conducting field sobriety tests. We held that glassy bloodshot eyes and an odor of alcohol were sufficient to warrant field sobriety tests in State v. Whitt (Nov. 9, 1993), Lawrence App. No. 93 CA 11, as is even a moderate odor of alcohol by itself. State v. Turner (Jan. 8, 1993), Highland App. No. 812. Indeed, our own research indicates that, in most instances, when an initial stop is justified by reasonable suspicion of wrongdoing, a disoriented demeanor and/or odor of alcohol provides further impetus for more intrusive investigative procedures. See, e.g., State v. Gottfried (1993), 86 Ohio App.3d 106, 619 N.E.2d 1185; Columbus v. Comer (Dec. 21, 1993), Franklin App. No. 93 AP-960."
 {¶ 30} In the case sub judice, we believe that the officer lawfully expanded the traffic stop's scope to determine whether appellant was driving while under the influence of alcohol. The officer: (1) smelled an odor of alcohol emanating from appellant; (2) observed that appellant had bloodshot eyes; and (3) noted that appellant was "slow" in obtaining his registration. These factors were sufficient to arouse the officer's suspicions and to justify further detention to conduct field sobriety tests. Thus, *Page 17 
appellant's assertion that the officer lacked reasonable suspicion to continue his detention in order to administer field sobriety tests is without merit.
 {¶ 31} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's second assignment of error.
 C PROBABLE CAUSE {¶ 32} In his third assignment of error, appellant asserts that the trial court erred by determining that the officer possessed probable cause to arrest him for driving while under the influence of alcohol. Appellant asserts that without the improperly administered field sobriety tests, the officer lacked probable cause to arrest him.
 {¶ 33} The standard for determining whether an officer has probable cause to arrest an individual for driving while under the influence of alcohol is whether, at the moment of arrest, the officer had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was operating a motor vehicle while under the influence. SeeState v. Homan, 89 Ohio St.3d 421, 427, 2000-Ohio-212, 732 N.E.2d 952, citing Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223,13 L.Ed.2d 142; State v. Timson (1974), 38 Ohio St.2d 122, 127, 311 N.E.2d 16. When making this determination, the trial court should consider the totality of facts and circumstances surrounding the arrest. Homan, citingState v. Miller (1997), *Page 18 117 Ohio App.3d 750, 761, 691 N.E.2d 703, and State v. Brandenburg (1987),41 Ohio App.3d 109, 111, 534 N.E.2d 906.
 {¶ 34} In the case sub judice, we have previously determined that the trial court properly concluded that Deputy Rhodes administered the field sobriety tests in substantial compliance with NHTSA regulations. Thus, the trial court could properly consider the results of the field sobriety tests in determining the existence of probable cause to arrest. Consequently, appellant's argument that probable cause to arrest did not exist because the court could not consider the results of the field sobriety tests is without merit. Appellant does not otherwise challenge whether the officer had probable cause to arrest him.
 {¶ 35} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's third assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period. *Page 19 
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
McFarland, P.J. Kline, J.: Concur in Judgment Opinion
For the Court
[1] The deputy also administered a horizontal gaze nystagmus (HGN) test. Because the trial court suppressed the results of that test, we do not include it in our recitation of the facts. *Page 1