[Cite as *State v. Newsome*, 2016-Ohio-3509.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2015-A-0046** |
| RYAN KYLE NEWSOME, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2014 CR 00746.

Judgment: Affirmed.

*Nicholas A. Iarocci,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellant).

*William B. Norman,* Norman & Tayeh, LLC, 11509 Lorain Avenue, Cleveland, OH 44111 (For Defendant-Appellee).

DIANE V. GRENDELL, J.

{¶1} Plaintiff-appellant, the State of Ohio, appeals from the Judgment Entry of the Ashtabula County Court of Common Pleas, granting the defendant-appellee, Ryan Kyle Newsome's, Motion to Suppress evidence found in the search of a residence where he was arrested. The issue to be determined by this court is whether a motion to suppress evidence is properly granted when an officer testifies that consent to search a home was given through a statement to "go ahead" and search, although a reference to

consent had not been included in the police report and the officer stated that the authority to search was based on the arrest warrant. For the following reasons, we affirm the decision of the lower court.

{¶2} On January 29, 2015, the Ashtabula County Grand Jury issued an Indictment, charging Newsome with Illegal Manufacture of Drugs, a felony of the second degree, in violation of R.C. 2925.04(A) and (C)(3)(a); Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs, a felony of the third degree, in violation of R.C. 2925.041(A); and Aggravated Possession of Drugs, a felony of the second degree, in violation of R.C. 2925.11(A) and (C)(1)(c).

{¶3} Newsome filed a Motion to Suppress on June 1, 2015. He argued, inter alia, that evidence found during a search of his girlfriend's home, various items related to the manufacture and possession of methamphetamine, must be suppressed because the police lacked a search warrant, exigent circumstances, or consent. The State's response included several justifications for the admission of the evidence, including that Newsome lacked standing to challenge the search, the arrest warrant provided grounds to search, and there were exigent circumstances.

{¶4} A suppression hearing was held on July 21, 2015. The following testimony was presented:

{¶5} Ashtabula County Sheriff's Department Detective Brian Rose testified that on December 2, 2014, he went to 1820 East 45th Street to serve an arrest warrant for Newsome and his girlfriend, Tricia Kirk. Rose believed Newsome would be inside the house based on anonymous phone tips that people had seen him there. Upon arrival, Rose noticed no tire tracks in the snow-covered driveway, furthering his belief that the subjects would be inside the house. Kirk answered the door and was taken into

2

custody. Rose testified that, after Kirk was placed under arrest, "[s]he told us we could search * * * she said go ahead and look for him." Rose did not put this in the police report since "she always gives consent," although he admitted that important information should be included in the police report. During past unsuccessful attempts to locate Newsome at the home, Kirk would "stall" the officers and "then allow everybody in" to search for Newsome. Rose was questioned about the consent several times on cross-examination. When asked again whether Kirk gave consent, Rose responded, "She did not tell us we couldn't search, no," then stating that she "said at that time we could look for him," and that he was sure Kirk had given consent.

{¶6} Upon searching the house, Rose saw items commonly used for the manufacture of methamphetamine in plain view and smelled an odor associated with fuel often used in meth labs. Newsome was located hiding in a compartment inside the shower.

{¶7} Newsome testified that Kirk is his ex-girlfriend and he previously stayed in her home on some occasions, including at the time of his arrest on December 2, 2014.

{¶8} In its August 20, 2015 Judgment Entry, the trial court granted the Motion to Suppress, suppressing all evidence seized during the search conducted on December 2, 2014. It concluded that there was no evidence the police had exigent circumstances to enter the house, they were not permitted to enter the house under the authority of the arrest warrant, and they did not have sufficient reliable information to believe Newsome was present.

{¶9} The trial court also made the following findings regarding the consent issue:

3

The first time [consent] was ever mentioned was on the cross-examination of Detective Rose, who acknowledged that he did not report anywhere that Kirk had given consent for the search.[1] He testified that she had always given consent on the prior occasions when police officers came to her home seeking the defendant. He indicated that the police were relying on the arrest warrant when they entered the premises. On questioning by the defense counsel, Detective Rose first stated that Kirk did not tell them they could not search; then she said that they could look for him and that he's not there. Detective Rose also stated that Kirk never stopped her consent to search. Upon further questioning about the specifics of her consent, Detective Rose testified that they asked if he, the defendant, was in there, and told her that they were going to look, to which Kirk responded, "That's fine, go ahead, but he's not here." Rose also testified that they warned her that if they found the defendant there, she would also be charged. Detective Rose testified that Kirk was placed in handcuffs and that she was on the porch when he entered the house.

{¶10} Based on this, the court found that the contention that consent was given was "not tenable," and "[t]he evidence that Tricia Kirk consented to the search of her

---

1. A review of the transcript reveals that during direct examination, Rose, when testifying about past arrests at the home, stated: "*just like when we were there*, Tricia Kirk stalled them for a time period, and then would allow everybody in to search for Ryan Newsome." (Emphasis added.). In other words, Rose was testifying that consent was given on this occasion as well, although he failed to provide any other testimony to this effect at that time.

home is equivocal, and, taken at its best, does not establish a voluntary consent by her."

{¶11} The State timely appeals and raises the following assignment of error:

{¶12} "The trial court erred in granting appellee's motion to suppress."

{¶13} At a suppression hearing, "the trial court is best able to decide facts and evaluate the credibility of witnesses." *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, ¶ 41. "Its findings of fact are to be accepted if they are supported by competent, credible evidence, and we are to independently determine whether they satisfy the applicable legal standard." *Id.*, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8; *State v. Wysin*, 11th Dist. Portage No. 2013-P-0037, 2013-Ohio-5363, ¶ 27 ("[o]nce the appellate court accepts the trial court's factual determinations, the appellate court conducts a de novo review of the trial court's application of the law to these facts") (citation omitted).

{¶14} The State argues that the Motion to Suppress was improperly granted solely based on the lower court's erroneous conclusion that voluntary consent to search was not given. The State contends that this finding was not consistent with Detective Rose's testimony.

{¶15} "A search conducted pursuant to a valid consent is constitutionally permissible." *Bainbridge v. Kaseda*, 11th Dist. Geauga No. 2007-G-2797, 2008-Ohio-2136, ¶ 28. Consent need not amount to a waiver and can be voluntary without being an "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). To determine whether valid consent exists, "the proper test is whether the totality of the circumstances demonstrates that the consent was voluntary. * * * The state has the burden to prove

consent was freely and voluntarily given by clear and convincing evidence." *Kaseda* at ¶ 28; *State v. Robinette,* 80 Ohio St.3d 234, 243, 685 N.E.2d 762 (1997). Our "review of the voluntariness of consent to search is 'limited to a determination of whether the trial court's decision was "clearly erroneous."'" (Citations omitted.) *Kaseda* at ¶ 27.

{¶16} The trial court determined that voluntary consent was not given, describing Rose's testimony and holding that evidence supporting a finding of consent was "equivocal." It must be emphasized that "it is squarely within the province of the trial court to assess the credibility of the witnesses by weighing their testimony and observing their demeanor." *State v. McDivitt*, 11th Dist. Lake No. 2011-L-129, 2012-Ohio-2243, ¶ 36. The findings made by the trial court show that it found Rose's testimony to lack credibility. After hearing Rose's testimony, it found the assertion that consent was given "not tenable," pointed out flaws, and suppressed the evidence based on the improper entry of the home and resulting search. Given the trial court's ruling, it is clear that it opted to disbelieve Rose's testimony.

{¶17} The trial court's determination is consistent with the testimony presented by Detective Rose, and is supported by competent, credible evidence. Rose did not include in his police report any reference to the consent that was given by Kirk, even though Rose confirmed that he "tr[ies] to" include all important information in his police reports. This would presumably include the justification for entering a home without a warrant. In addition, the wording of his statements, first that Kirk did not object to the search and then that she consented, raises possible credibility questions. It is also noteworthy that Rose testified he believed that a police search was justified under the arrest warrant. It seems likely that a request for consent may not be made if police already believed the search was justified. It must be stressed that "factual questions

6

during suppression hearings are to be resolved by the trial court because it sits as the trier of fact." *McDivitt* at ¶ 36. While the State outlines Rose's testimony that consent was given and argues that there was no evidence of coercion, given that the trial court found this testimony lacked credibility, it does not weigh in the State's favor.

{¶18} Thus, given that credibility is for the trier of fact to determine, as well as the standard that this court must accept facts supported by competent, credible evidence, there is no basis for reversal. We decline to second-guess the trial court's decision on this factual issue. Without the testimony of Detective Rose, the State failed to meet its burden of showing that consent was voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) ("[w]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given"); *State v. McLemore*, 197 Ohio App.3d 726, 2012-Ohio-521, 968 N.E.2d 612, ¶ 24 (2d Dist.).

{¶19} The sole assignment of error is without merit.

{¶20} For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas, granting Newsome's Motion to Suppress, is affirmed. Costs to be taxed against appellant.


THOMAS R. WRIGHT, J.,

COLLEEN MARY O'TOOLE, J.,

concur.

7